# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| **MARY STAPLES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Cause No.: 1:07-CV-327** |
| ) | |
| **PARKVIEW HOSPITAL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by Defendant Parkview Hospital, Inc. ("Parkview") on November 14, 2008.  Docket at 29.  Plaintiff Mary Staples ("Staples") filed a response in opposition to the motion on December 19, 2008 (docket at 34) and Parkview filed a reply on January 5, 2009 (docket at 35).  For the reasons discussed in this Order, the motion for summary judgment is DENIED.

## FACTUAL BACKGROUND

Mary Staples was employed as a nurse at Parkview Hospital in Fort Wayne, Indiana, for more than 15 years, having been hired in December 1991.  She worked in the neonatal intensive care unit or NICU, which was part of Parkview's New Life Center ("NLC").  Staples was terminated from her position on or about September 12, 2007, allegedly for having violated Parkview's anti-harassment policy.  She brought the present lawsuit claiming that the real reason Parkview fired her was because she was preparing to take time off from her job pursuant to the Family and Medical Leave Act ("FMLA").

At the time of her termination, Staples's immediate supervisor was Lori Norton. Katherine Shockey was a coworker of the plaintiff.  A third Parkview employee, Laura Michael,

served as a preceptor for Shockey. According to Parkview, Michael informed Norton that

Shockey "was upset about Staples asking her questions. . . . Norton conducted an investigation

and determined that Staples had asked two (2) sexual questions of Shockey . . . and directed

another statement of a sexual nature toward Shockey. Brief in Support of Parkview's Motion for

Summary Judgment ("Defendant's Brief in Support"), docket at 30, p. 3 (citing Deposition of

Laura Michael, Defendant's Exhibit E and Deposition of Katherine Shockey, Defendant's

Exhibit F). According to Parkview, the two questions Staples was alleged to have asked her

coworker were: "(1) when did you lose your virginity? and (2) when did you have your first

orgasm?" *Id*. (citing Deposition of Shockey). These questions were allegedly posed at a

patient's bedside. *Id*. The statement that Parkview claims Staples made to Shockey was: "there

is one rule if you are going to work in the NICU, and that is if you were to have sex before you

come to work, you have to take a shower." *Id*. Shockey testified in her deposition that she was

offended by the questions and the statement. *Id*.

Parkview states that following Norton's investigation, Norton and Jackie Alt, the

Executive Director of the NLC, met with Staples to discuss the situation and that "Staples

acknowledged that a conversation took place in which she recounted to her co-workers three (3)

sexual questions and two (2) rules." *Id*. (citing Plaintiff's Complaint, docket at 1, ¶¶ 11-14).

Parkview states that during this meeting, Staples was informed that her remarks "created a

hostile working environment" and that she apologized for those remarks. *Id*. This, however,

was not the end of the situation. Norton, claims Parkview, "further investigated the alleged

incident . . . . [and] discussed the findings of her investigation with Alt, Kari McNamara . . . ,

Manager of Employee Relations–Human Resources, and Dena Jacquay . . . , Director of Human

Resources." *Id.* (citing Affidavit of Lori Norton, Defendant's Exhibit D). As a result of the investigation and subsequent discussions, the decision was made to terminate Staples "for violating Parkview's Anti-Harassment policy." *Id.*, p. 4. Finally, Parkview also claims that "Staples had been previously reprimanded in 2005 after the staff informed management that Staples had engaged in 'sexual discussions' in the workplace." *Id.* (citing Deposition of Jeanene Kelly, Defendant's Exhibit H).[1]

Staples does not dispute that she made some arguably inappropriate comments or asked some personal questions of coworkers, although she does challenge the context in which some of them were made. However, she argues that Parkview's entire investigation of the matter was "slanted and biased" and was used as a pretext to fire Staples because "she was in the process of scheduling her eighth FMLA leave of absence for carpal tunnel surgery the following month, October 2007." Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), docket at 34, p. 1. Staples claims that the "alleged 'harassing comments' were not addressed for several weeks, never caused any of the nurses enough distress to report the comments immediately after they were spoken, and did not cause any of the nurses who heard the remarks to refuse to work in the unit or with Staples. Other nurses in the unit had also made similar sexual comments and told occasional sexual jokes, as did members of Parkview's NICU management." *Id.*

Staples claims that just prior to her termination, she had informed Norton that she needed FMLA leave for her carpal tunnel surgery and that she would likely need "two (2) additional FMLA leaves of absence when she accumulated enough paid time off ('PTO') hours to pay her

---

[1] Kelly was the Director of Perinatal Services in 2005. Defendant's Reply Brief, p. 2.

during her recuperation periods: carpal tunnel surgery on her left wrist, and bariatric surgery so

that Staples could return to the NICU flight team in the future." *Id.*, p. 2. (Staples explained that

the NICU flight team was a team of "nurses who help to transport sick babies from facility to

facility." *Id.*, n. 1.)

Staples offers the following summary of her perspective of the situation that resulted in

her termination:

> Not so coincidentally, at the time that Norton was working to find replacements to
> cover for Staples' FMLA leave, the NICU was experiencing a downturn in
> patients so severe that the NICU nurses had been asked to voluntarily reduce their
> full time equivalent ("FTE") hours. Further, the other nurses identified during the
> investigation of Staples, who had also reportedly been engaging in the same
> sexually-laced conversations and jokes, were never spoken to, disciplined in any
> manner, or terminated. None of those same nurses, however, had scheduled or
> were planning to take an FMLA leave of absence in the fall of 2007 when the
> NICU was actively attempting to reduce FTE hours.

*Id.*

In summary, then, Parkview argues that it terminated Staples for a perfectly legitimate

reason–because she violated the hospital's strict anti-harassment policy which, among other

things, prohibits sexually based comments, remarks or jokes in the workplace. Defendant's

Brief in Support, p. 4. Staples claims that any comments or remarks she made were

inconsequential and that Parkview simply took advantage of that situation to fire her since she

was about to take leaves of absence under the FMLA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Disputes concerning

material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving

statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

## DISCUSSION

The FMLA provides that employers must provide eligible employees with up to 12 weeks of unpaid leave from their job for, among other things, a "serious health condition" that makes the employee unable to perform the essential functions of her position. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590 (7th Cir. 2008) (internal citations omitted). The Act makes if unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by [the Act]." *Id.* In this case, Staples's claims under the FMLA are twofold. First, she claims that Parkview violated the FMLA by interfering with her

attempt to exercise her right to take medical leave under the Act. Second, she alleges that

Parkview retaliated against her for exercising her FMLA rights when the Hospital terminated

her.

To prevail on her claim of interference with her FMLA rights, Staples must prove: 1) that

she was an eligible employee under the Act; 2) that Parkview was a covered employer under the

Act; 3) that she was entitled to leave under the Act; 4) that she provided Parkview with sufficient

notice of her intent to take such leave; and 5) that Parkview denied her benefits to which she was

entitled. *Id.* It is unlawful for an employer to interfere with an eligible employee's exercise of

the rights enumerated in the FMLA. *Ridings v. Riverside Medical Center*, 537 F.3d 755, 761 (7th

Cir. 2008). The language of the FMLA states as follows:

> (a) Interference with rights
>
> (1) Exercise of rights
> It shall be unlawful for any employer to interfere with, restrain, or deny the
> exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination
> It shall be unlawful for any employer to discharge or in any other manner
> discriminate against any individual for opposing any practice made unlawful by
> this subchapter.

29 U.S.C. § 2615(a). "When an employee alleges a deprivation of these substantive guarantees,

the employee must demonstrate by a preponderance of the evidence only entitlement to the

disputed leave. In such cases, the intent of the employer is immaterial." *Diaz v. Fort Wayne

Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997).

**1. Claim of Interference With FMLA Rights.**

Parkview argues in its motion for summary judgment that Staples cannot establish that

she was prevented from exercising her FMLA rights because she was not entitled to FMLA

leave in the first place at the time she was terminated.  Defendant's Brief in Support, p. 8.

Parkview points out that "[a]n employee is only entitled to leave if (1) she is afflicted with a

'serious health condition' and (2) that condition renders her unable to perform the functions of

her job." *Id.*, pp. 8-9 (quoting *Caskey*, 535 F.3d at 590).  The FMLA defines a "serious health

condition" as "an illness, injury, impairment, or physical or mental condition that involves–(A)

inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing

treatment by a health care provider."  29 U.S.C. § 2611(11).  According to Parkview, Staples did

not meet this definition.  Parkview argues that "[w]hile it is undisputed that Staples was

diagnosed with right carpal tunnel syndrome, Staples has adduced no evidence that it represents

a serious health condition that renders her unable to perform the functions of her job as defined

by the FMLA.  In fact, Staples testified in her deposition that she had been contemplating carpal

tunnel surgery for years during which time she continued to perform the essential functions of

her job as a[n] NICU nurse."  Defendant's Brief in Support, p. 9. So, while Parkview readily

concedes that Staples had carpal tunnel in her right wrist, the Hospital argues that it did not

involve "continuing treatment by a health care provider" and that the only treatment Staples had

for this condition was six steroid injections over a period of three and a half years.  *Id.*[2]

However, as Parkview is also quick to point out, "continuing treatment" is defined under the

FMLA as "a period of incapacity of more than three consecutive calendar days, and any

subsequent treatment or period of incapacity relating to the same condition."  *Id.* (citing 29

C.F.R. § 825.114(a)(2)(i), (iii)).  Therefore, Parkview claims that "Staples has not adduced any

---

[2] Staples does not contend that she was ever hospitalized for her carpal tunnel syndrome
and so the only type of "serious health condition" her syndrome could have been was one
requiring "continuing treatment by a health care provider."

evidence for a reasonable jury to conclude that she was entitled to leave under the FMLA." *Id.*, p. 10. Parkview concludes by arguing that "[i]t is proper to require a plaintiff 'to prove that she was afflicted with an FMLA-qualifying condition demonstrating she was entitled to leave under the FMLA because otherwise, she did not have any right under the Act with which her employer could have interfered.'" *Id.* (quoting *Diaz*, 131 F.3d at 713.

Parkview also argues that Staples failed to provide the Hospital with sufficient notice of her intent to take FMLA leave and, therefore, did not invoke any rights under the Act with which the Hospital could have interfered. *Id.* Parkview argues that "[t]o provide the requisite notice to trigger an FMLA claim, the employee must provide information such that the employer would reasonably have been on notice as to the severity of the condition." *Id.* (citing *Horwitz v. Bd. of Educ.*, 260 F.3d 602, 616 (7th Cir. 2001). Parkview claims that "Staples dealing with her symptoms of right carpal tunnel syndrome 'for years' via having an occasional injection would not constitute the requisite notice to trigger an FMLA claim. And, as previously stated, the statement Staples claims she made to Norton in the Spring of 2007 that she was contemplating carpal tunnel surgery on her wrist in October 2007 is, in and of itself, insufficient to trigger an FMLA claim." *Id.* In fact, Norton testified in her deposition that she was unsure when Staples mentioned the possibility of taking FMLA leave for her carpal tunnel surgery. Norton explained that "staff members mention that on a regular basis and until they apply for [FMLA leave] through the Parkview process, I don't commit their dates or their times or things like that to memory." *Id.*, p. 11 (quoting Deposition of Lori Norton, Defendant's Exhibit C, p. 120). Norton's testimony, according to Parkview, supports its contention that Staples mentioned the *possibility* of having surgery (and, in turn, the *possibility* of needing FMLA leave) almost in

passing, and that such a comment is insufficient to constitute sufficient notice to Parkview so as to trigger the applicability of the FMLA. *Id.*

Finally, Parkview points out that Staples applied for, and was granted, FMLA leave seven different times during her 15-year tenure with the Hospital and that "at no time did Staples apply for FMLA leave for her wrist or for any other purpose in 2007 prior to her termination." *Id.*, p. 12. (It is undisputed that Staples did not have a formal FMLA request pending at the time of her termination.) For these reasons, Parkview claims it is entitled to judgment in its favor on Staples's claim that the Hospital interfered with her rights under the FMLA.

Staples agrees that to establish a *prima facie* case of interference with rights under the FMLA, she must meet the five-prong test as set out in Parkview's brief. Plaintiff's Brief in Opposition, p. 9.[3] However, Staples argues that she had a "serious health condition" as that term is defined by the FMLA and that she provided sufficient notice to Parkview of her intention to take leave under the Act. *Id.* Therefore, Staples argues, she met her burden of establishing a *prima facie* case that Parkview interfered with her rights under the FMLA. Staples first notes that the FMLA does not require that she "be totally incapacitated *before* she takes FMLA leave. If Staples meets the prerequisites for the FMLA leave, working 1250 hours in the preceding 12 month time period, the serious health condition has to render her unable to work for three or more consecutive days either during or after treatment requiring at least two visits to a health care professional." *Id.*, p. 11 (citing 29 C.F.R. § 825.114(a)(2)(i),(iii)). Staples also explains that she became more and more unable to perform her [nursing] position as the carpal tunnel

---

[3] As Staples points out, Parkview does not contest the second prong of the test, that is, that the Hospital is an employer that is subject to the provisions of the FMLA.

syndrome worsened, until she was receiving assistance from her . . . coworkers just to feed the infants in her care." *Id.*, (citing Affidavit of Mary Staples, Plaintiff's Exhibit 5, ¶ 10). Also in her affidavit, Staples indicates that putting off the surgery for her carpal tunnel syndrome could have subjected her to a risk of permanent nerve damage. *Id.*, ¶¶ 2,8; *see also*, attachment A thereto (medical records from St. Joseph Hospital, including reports from Christopher W. LaSalle, M.D.). Staples did, in fact, end up having her carpal tunnel surgery on October 16, 2008. *Id.*, attachment A, Surgery Report. Staples states in her affidavit that "[f]ollowing the surgery, [she] was in a splint for five (5) days, had stitches for 13 days, and was off of work for three (3) weeks." *Id.*, (citing Staples Affidavit, ¶¶ 9-12). Therefore, Staples maintains that her carpal tunnel syndrome met the definition of a "serious health condition" under the FMLA, notwithstanding Parkview's argument that she did not miss more than three consecutive days of work in 2007 prior to her termination or that her "continuing treatment" consisted only of periodic steroid injections.

The court agrees with Staples on this point. Neither the FMLA nor the relevant portions of the CFR state that an employee's "serious health condition" must render them unable to perform their job *prior* to taking the leave. This only stands to reason. Many people may need to have surgery, for example, for a problem that is non-emergent. However, they may still qualify for FMLA leave in order to have that surgery and to spend time recuperating from it.

Staples also argues that the "notice" she gave to Parkview of her intention to take FMLA leave was sufficient under the law. Staples first notes that an employee need not even mention the FMLA in order to be entitled to its benefits. Plaintiff's Response, p. 10. Staples argues that not only did she specifically inform Norton, one of her supervisors, that she intended to take time

off of work for the purpose of having surgery on her wrist, but further points out that "Norton indicated to Hancher that Hancher would be substituting for Staples from October 2007 through November 2007 while Staples was off of work following her carpal tunnel surgery." *Id.* Hancher was also a nurse at Parkview at the relevant time, and submitted an affidavit in which she confirms that she and Norton had discussions about Staples's impending (or at least anticipated) medical leave and that Hancher would was told by Norton that she (Hancher) could plan to work certain evenings "during the time that Mary would be off of work for her carpal tunnel wrist surgery in October and November 2007." *Id*., Plaintiff's Exhibit 11, Affidavit of Amy Hancher, ¶¶ 20 and 21. So, argues Staples, Parkview, through Norton, did have notice of her intention to take FMLA leave, despite the Hospital's attempt to characterize that notice as nothing more than a passing remark. As Staples points out, it is not necessary for an employee in need of FMLA leave to provide a formal notification of her need for a leave of absence. Still, Parkview is also correct that an employer must have some type of notice that an employee has some health condition that might qualify for FMLA leave. Merely "calling in sick," for example, is not enough to alert an employer that an employee might need FMLA leave. *de la Rama v. Illinois Dept. of Human Services,* 541 F.3d 681 (7th Cir. 2008). On the other hand, once an employee gives notice to her employer that she likely has an FMLA-qualifying condition, the burden is then on the employer to investigate whether she is entitled to FMLA leave. *Burnett v. LFW, Inc.,* 472 F.3d 471, 478-80 (7th Cir. 2006).

In this case, Staples informed Norton personally that she was contemplating surgery, and even told Norton that she anticipated having the surgery in October of 2007. It is also worth noting that Norton did not deny having a conversation with Staples about her possible carpal

tunnel surgery and need for time off work. Rather, she merely testified that she could not remember the details of that conversation. *See* Deposition of Lori Norton, Defendant's Exhibit C, p. 120. This evidence is adequate to establish, at least, a genuine issue of fact regarding the sufficiency of the notice Staples gave to Parkview concerning her need for time off work for her wrist surgery.

The court concludes that Staples has established a *prima facie* case entitling her to pursue her claim that Parkview interfered with her FMLA rights beyond the summary judgment phase. The evidence before the court at this point in the litigation, considered in a light most favorable to Staples, supports her contention that: 1) she was qualified under the FMLA; 2) Parkview is an employer subject to the FMLA; 3) she was entitled to an FMLA leave of absence; 4) she provided Parkview with sufficient notice of her intent to take FMLA leave; and 5) Parkview denied or otherwise interfered with her ability to take that leave while employed at the Hospital. With regard to factual questions four and five, it would be more accurate to state that Staples has at least succeeded in raising genuine issues of fact concerning whether her notice to Parkview was sufficient to invoke the FMLA and whether Parkview's decision to terminate her constituted interference with her FMLA rights. As such, those material fact issues must ultimately be determined by a jury and summary judgment in favor of Parkview would be inappropriate.

**2. Claim of Retaliation Under the FMLA.**

As stated previously, the FMLA makes it unlawful for an employer to discharge or otherwise discriminate against an employee for exercising or attempting to exercise rights granted under the Act. 29 U.S.C. § 2615(a)(2). Like other types of employment discrimination claims, such as those brought under Title VII of the Civil Rights Act, plaintiffs asserting a

retaliation claim under the FMLA may attempt to prove their case using either a direct or an indirect method of proof. In the present case, Staples concedes that she does not have direct evidence of retaliation to present in opposition to Parkview's motion for summary judgment, and that she is proceeding under the indirect method. Plaintiff's Response, p. 13. Under the indirect method, an employee must establish a *prima facie* case by proving that she (1) engaged in a statutorily protected activity; (2) met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Nichols v. Southern Illinois University-Edwardsville,* 510 F.3d 772, 784-85 (7th Cir. 2007). Once the *prima facie* case is established, the burden shifts to the employer to produce a non-discriminatory reason for its action; if the employer meets this burden, the burden shifts back to the employee to demonstrate that the proffered reason is pretextual. *Id.* at 785. *See also, Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592-93 (7th Cir. 2008).

Parkview maintains that it's decision to terminated Staples was completely unrelated to her stated intent to take FMLA leave and so did not constitute unlawful retaliation under the Act. It is Parkview's position, of course, that Staples was fired for the sole reason that she created a sexually hostile working environment in violation of the Hospital's express and strict anti-harassment policy.

As for Staples's ability to establish a *prima facie* case of retaliation, Parkview first contends that she "cannot show that she engaged in a protected activity. She did not apply for, nor did she take FMLA leave in 2007. Merely indicating in passing that she contemplated having wrist surgery is not tantamount to engaging in protected activity. And, there is no

evidence that a right carpal tunnel release is a 'serious medical condition' considered an FMLA-qualifying condition entitling her to FMLA leave." Defendant's Brief in Support, p. 13. The court has already rejected this argument for the reasons discussed previously in this Order and need not address them again in the context of Staples's retaliation claim. The court has concluded that Staples has presented sufficient evidence at least to raise a fact issue concerning her notice to Parkview of her need for time off work for carpal tunnel surgery. This same evidence likewise is sufficient to establish that she engaged in protected activity under the FMLA (i.e., that she intended to utilize FMLA leave).

Parkview next argues that Staples fails to establish the second prong of her *prima facie* case–that she was performing her job satisfactorily. In fact, Parkview goes so far as to claim that "it is undisputed that Staples was not performing her job satisfactorily." *Id.*, p. 14. According to Parkview, this is because Staples admitted to Norton and Alt that she had made statement or comments of a sexual nature in the workplace, and that Shockey "was offended by Staples' behavior. . . ." *Id.* This was a clear violation of Parkview's anti-harassment policy and, therefore, constituted unsatisfactory performance.

Finally, Parkview also contends that "Staples has not and cannot adduce evidence to show that employees at Parkview who did not indicate that they may use FMLA leave in the future were treated more favorably." *Id.*

Staples responds by discussing in great detail her version of the comments she made and the circumstances under which she made them, which not surprisingly differs from the version presented by Parkview. Staples claims, for example, that "other nurses in the unit had also made similar sexual comments and told occasional sexual jokes, as did members of Parkview's NICU

management." Plaintiff's Response, p. 1. Staples also contends that her comments did not

violate the provisions of Parkview's anti-harassment policy. Staples points out that the policy,

found in the Personnel Policy Manual, defines harassment as (among other things) "verbal

conduct designed to threaten, intimidate or coerce coworkers which is based in whole or in part,

on the person's . . . gender, sexual orientation, pregnancy or marital status. . . . Each of the

policies also require that the harassment substantially interfere with the individual's ability to

perform his job." *Id.*, p. 3 (paraphrasing relevant portions of the Personnel Policy Manual,

Plaintiff's Exhibits 4 and 8). Staples argues that her comments did not rise to such an offensive

level and that "nothing was said in the attempt to threaten, intimidate or coerce" her coworkers.

*Id.*, p. 4.

     More importantly, for purposes of a summary judgment determination, Staples presents

evidence that at least raises serious credibility issues concerning the comments Staples made and

whether any of her coworkers were offended by them, let alone whether they created a hostile

working environment, which was the alleged basis for Staples's termination.[4] For example, in

addition to Shockey, other of Staples's coworkers were identified by Parkview during the course

of its investigation as having heard the remarks or having participated in the discussions in

---

    [4] Staples devotes several pages of her response brief to a discussion of what constitutes a
"hostile work environment," including discussing some cases involving Title VII sex
discrimination claims. In its reply brief, Parkview faults Staples for this, arguing that her
"introduction and application of the legal definition of 'hostile work environment' to the facts of
this case is improper because the legal definition of 'hostile work environment' is irrelevant and
immaterial." Defendant's Reply, p. 5. However, it seems clear to the court that Staples is not
attempting to inject Title VII definitions or concepts into this case. Rather, her discussion of the
law regarding a "hostile work environment" is presented to illustrate her contention that
Parkview's claim that it fired her for violating the Hospital's anti-harassment policy was
pretextual, because the inappropriate behavior she is accused of engaging in could not
reasonably be seen as creating a hostile work environment.

which they were uttered. These individuals included Nykol Byrd and Amanda Wiehe. Shockey

and Wiehe both testified in their depositions that they did not report Staples's comments to

management and that they discussed them only many weeks later when being interviewed by

Norton during Norton's investigation into the matter. Deposition of Katherine Shockey,

Plaintiff's Exhibit 20, pp. 26-27; Deposition of Amanda Wiehe, Plaintiff's Exhibit 19, pp. 15-17.

Byrd testified that she did not recall ever being present when Staples made any comments or

remarks of a sexual nature to Shockey, which is contrary to Shockey's own version of the events

wherein Shockey stated that Byrd was present and overheard the remarks. Deposition of Nykol

Byrd, Plaintiff's Exhibit 22, pp. 21-24. Also, Shockey and Wiehe both testified that while they

felt Staples's alleged comments were "inappropriate," neither woman considered them so

offensive that they interfered with or impeded the workplace environment. *Id.* Also, two other

nurses who were apparently present at the time Staples made some sort of comment or remark to

Wiehe testified in depositions that they were not offended by the statements and considered them

to be nothing more than lighthearted remarks or jokes. *See* Deposition of Jesslyn Sparks,

Plaintiff's Exhibit 23, p. 26; Deposition of Laura Hoskins, Plaintiff's Exhibit 24, p. 28. This

evidence raises questions about what Staples said, to whom she said it, and what impact it had–if

any–on her coworkers or the work environment. Parkview, however, claims that it considered

the remarks serious enough to fire a nurse that had been employed at the Hospital for 15 years.

This markedly and dramatically different perspective on the entire situation raises issues of

credibility. Only live testimony before a jury will establish exactly what happened and whether

Parkview's responses and decisions were innocent and justified or whether they constituted

unlawful violations of the FMLA.

As stated above, Parkview claims that Staples fails to establish the fourth prong of her *prima facie* case of retaliation because "she cannot adduce evidence to show that employees at Parkview who did not indicate that they may use FMLA leave in the future were treated more favorably." This is a somewhat confusing argument, at least grammatically if not conceptually. Other nurses in the Parkview NICU would constitute "similarly situated employees" whether or not they "indicate[d] that they may use FMLA leave in the future." Be that as it may, Staples does present evidence that seems to indicate that similarly situated employees, for whom leave under the FMLA was apparently not at issue, may have been treated more favorably than she– specifically Shockey and Wiehe. Both of those nurses, who of course were involved in the entire situation with Staples, subsequently received beneficial employment actions. According to Staples, Shockey was promoted soon after Staples was terminated, and Wiehe received a favorable transfer to a more desirable shift. Plaintiff's Response, p. 8. Staples presents deposition testimony from other nurses at the Parkview NICU, which testimony arguably supports her argument that Shockey and Wiehe were treated preferentially. *See* Deposition of Maureen Moran-Dunno, Plaintiff's Exhibit 15; Deposition of Jesslyn Sparks, Plaintiff's Exhibit 23; and Affidavit of Tara Grier, Plaintiff's Exhibit 12. Considered in the context of the evidence in its entirety, this evidence establishes at least a fact issue concerning whether similarly situated employees were treated more favorably than Staples.

Since the court concludes that Staples has met her burden of establishing a *prima facie* case of retaliation, the inquiry shifts to the issue of pretext. This discussion, however, is a brief one. Parkview claims Staples was fired as a result of her alleged comments to coworkers, which the Hospital contends created a hostile work environment and therefore violated its anti-

harassment policy. Staples maintains that this proffered nondiscriminatory reason for her termination is bunk and that she was fired because she had utilized FMLA leave multiple times in the past and indicated her intention to do so again in the future. An employee may refute an employer's proffered reason for discharging the employee by establishing: 1) that the proffered reason is factually baseless; 2) that the reason was not the true motivation for the discharge; or 3) that the reason was insufficient to motivate the employer to discharge the employee. *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). In this case, Staples has presented sufficient evidence from which a jury could conclude that Parkview's proffered reason for terminating her was pretextual. This evidence has already been discussed in the context of the elements of Staples's *prima facie* claim for interference with FMLA rights and her claim for retaliation, and there is no need to reiterate those previous discussions. Examined in a light most favorable to Staples, the evidence would permit a reasonable jury to conclude that Parkview's proffered reason for firing Staples was factually baseless or that it constituted an untrue or insufficient motivation for that termination.

Parkview should be commended for having a written policy prohibiting sexual harassment or any other type of inappropriate behavior in the workplace, for investigating allegations or rumors of such behavior, and for taking prompt action when such action is warranted. That might be exactly what happened in this case. However, for purposes of summary judgment, Staples has presented sufficient evidence to establish her *prima facie* claims of violations of the FMLA. As discussed above, many of the relevant factual disputes cannot be resolved absent credibility determinations–determinations that are the sole domain of a jury. As is usually the case, the court is confronted with two dramatically different interpretations of what

happened leading up to a plaintiff's termination. But it is well established that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000). For all of these reasons, the court concludes that Parkview's motion for summary judgment must be denied as to Staples's claims for interference of FMLA rights and retaliation.

### 3. After-Acquired Evidence–Limitation on Damages.

As part of its motion for summary judgment Parkview raises the after-acquired evidence doctrine. Defendant's Brief in Support, p. 16. Parkview seeks to limit any possible backpay calculation of damages Staples might receive by cutting off such calculation as of July 30, 2008. *Id.*, p. 18. Parkview argues that the after-acquired evidence doctrine permits a court to place such limit on the calculation of a backpay award when "evidence of wrongdoing, which would have resulted in the discharge of an employee on those grounds alone had that evidence been acquired prior to discharge, does not bar employees from recovering damages for illegal discrimination in the workplace, rather, it changes the calculation of damages." *Id.*, pp. 16-17 (citing *McKennon v. Nashville Banner Publishing Company*, 513 U.S. 352, 362 (1995)).

Parkview argues that during the discovery phase of this case, depositions were taken of several nurses who worked with Staples. In the course of those depositions, claims Parkview, the Hospital "discovered . . . that many of the nurses who worked with Staples were very uncomfortable with the questions and sexual conversation of Staples." *Id.*, p. 17. Parkview then offers quotes from the depositions of four former coworkers who testified that they felt uncomfortable with certain sexually oriented comments Staples allegedly made in the workplace.

*Id.*, pp. 17-18.  According to these witnesses, Staples made comments of a sexual nature on several different occasions, in addition to the ones discussed previously in this Order.  Parkview also claims that one of these nurses, Maureen Randall, decided to quit her job at Parkview because she was allegedly so upset or offended by Staples's alleged conduct.  *Id.* (citing Deposition of Maureen Randall, Defendant's Exhibit T, pp. 6-8).  Several of these depositions were taken in late July 2008, which is why Parkview contends that as of the end of that month, it could have (and would have) fired Staples independent of the remarks she is accused of making prior to her termination in 2007.  *Id.*, p. 17.  Consequently, Parkview asks the court to "enter an Order finding as a matter of law that any backpay calculation be cut off on or about July 30, 2008."  *Id.*, p. 18.

Staples responds to this argument in much the same way she responded to the other arguments propounded by Parkview–by challenging their veracity.  Plaintiff's Response, p. 19.  As for the situation with Randall, Staples herself claims she has no recollection of the incident.  *Id.* (citing Deposition of Mary Staples, Plaintiff's Exhibit 13, pp. 38-42).  Hancher was apparently present during this incident also, and testified that Staples did not ask Randall a question of a sexual nature.  Instead, Hancher insists that Staples had inquired of her how often she and her husband had sex.  *Id.*, p. 20.  However, Hancher also testified that the question was innocent, in that Staples asked it only in the context of discussing the fact that "Hancher and her husband were having problems conceiving."  *Id.* (quoting Hancher Affidavit, Plaintiff's Exhibit 11, ¶ 12).  In addition, Staples maintains that Randall quit her job at Parkview not because she was offended by Staples's behavior, but because she had lost her unborn child as a result of an auto accident and "just couldn't work around little tiny infants."  *Id.* (quoting Deposition of

Maureen Randall, Plaintiff's Exhibit 26, p. 11).[5]

The court denies Parkview's request for judgment as a matter of law regarding any limitation of damages award. Such a judgment would be premature and, more importantly, would require the court do make credibility determinations and/or to weigh the evidence on this specific issue. If the jury concludes, based on the live testimony of all the witnesses, that Parkview could have legitimately terminated Staples in July 2008 (assuming the jury concludes Parkview did not legitimately terminate her in September 2007), then Staples's backpay damages, if any, might be properly limited to a specific date. That determination will be made at the time of trial, perhaps by way of a jury instruction or special verdict form.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Defendant Parkview Hospital, Inc., is DENIED.

Entered: March 3, 2009.

                                        /s/  William C. Lee
                                        William C. Lee, Judge
                                        United States District Court
                                        Northern District of Indiana

---

[5] According to the deposition excerpts before the court, it appears that Staples's assertion that Randall quit her job as an NICU nurse because of her tragic accident and the loss of her unborn child is correct. The deposition excerpts provided by Parkview, which it claims support its contention that Randall quit her job due to inappropriate comments by Staples, do not appear to do so. In fact, in the deposition pages Parkview provided in its compilation of exhibits, Randall does not make any such assertion. This is not to imply that Parkview is being disingenuous in making this factual assertion (perhaps it was merely the result of the wrong deposition pages being provided), but it does serve to highlight the need for live testimony in this case to clarify–before a jury–exactly who said what to whom and under what circumstances.