UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARY STAPLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 1:07-CV-327 |
| | ) | |
| PARKVIEW HOSPITAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on the Motion for Judgment as a Matter of Law or, in the Alternative for a New Trial filed by Defendant Parkview Hospital, Inc. ("Parkview") on August 31, 2009. Docket at 88. Plaintiff Mary Staples ("Staples") filed a response in opposition to the motion on September 8, 2009 (docket at 91) and Parkview filed a reply on September 17, 2009 (docket at 35). The court held a hearing on the motion on November 10, 2009, and the motion is now ripe for resolution. For the reasons discussed in this Order, the motion is DENIED. Parkview is directed to file a response to plaintiff's pending Motion for Attorney Fees (docket at 85) and plaintiff's pending Motion for Award of Front Pay and Prejudgment Interest (docket at 87) within thirty (30) days of the date of entry of this Opinion and Order.[1] Plaintiff may file a reply brief, if desired, within fifteen (15) days of receipt of Parkview's response.

---

[1] Parkview previously filed a motion for extension of time to file its response to plaintiff's motion for fees and her motion for front pay. Docket at 92. The court granted that motion and instructed Parkview to file said response within fifteen (15) days after the entry of this Order. Docket at 93. However, given the upcoming holiday season, the court recognizes that Parkview's counsel may need additional time in which to complete and file this response. Accordingly, Parkview is hereby granted 30 days rather than 15 days in which to file its response to the remaining pending motions.

**DISCUSSION**

Staples filed suit against Parkview, her former employer, alleging violations of the Family and Medical Leave Act ("FMLA").[2] The case went to trial on August 18, 2009, and following a three-day trial the jury found in favor of Staples on her FMLA interference claim and against her on her FMLA retaliation claim. *See* docket at 79. Parkview moved for a directed verdict at the close of the plaintiff's case, which the court denied. That motion was renewed following the verdict and the court instructed Parkview's counsel to present the renewed motion in writing. Parkview's motion for judgment as a matter of law is brought pursuant to Fed.R.Civ.P. 50 and its alternative request for a new trial is made pursuant to Fed.R.Civ.P. 59.

As stated, Staples asserted two claims against Parkview. The first was a claim that Parkview interfered with her statutory rights under the FMLA when the hospital terminated her as she was preparing to take FMLA leave to have surgery on her wrist. The second claim alleged that her termination was in retaliation for her attempts to exercise her rights under the FMLA. In its present motion, Parkview claims that it is entitled to judgment as a matter of law "for the reason that the undisputed evidence in the case establishes that the FMLA had nothing to do with Staples' termination from employment. The evidence was insufficient to permit the reasonable inference that Parkview's reason for termination was false." Motion for Judgment, p. 4. Parkview argues that Staples was fired for one legitimate reason–she allegedly violated the hospital's "Anti-Harassment Policy" by engaging in inappropriate sexual conversations in the

---

[2] The underlying facts of this case are recited at length in this court's Opinion and Order issued on March 3, 2009, in which the court denied Parkview's motion for summary judgment. Docket at 36.

workplace. *Id*., pp. 5-6. Staples' direct supervisor, Lori Norton, learned that Staples had made sexually oriented comments while working in the hospital's Neonatal Intensive Care Unit. These comments included, for example, asking other nurses in the unit how old they were when they lost their virginity and stating that if nurses engaged in sex before coming to work that they were required to take a shower. While Staples never denied making these comments or engaging in discussions of a sexual nature while at work, she testified that such conduct was quite common in the NICU and that other nurses, a technician, and even physicians sometimes engaged in such discussions. Nonetheless, Norton investigated the situation and reported it to her own supervisor, Jackie Alt, and to Dena Jaquay, Parkview's head of Human Resources. *Id*., pp. 4-5. In the course of her investigation, Norton interviewed several of the nurses who worked with Staples and asked them if they ever heard Staples make sexual comments or engage in discussions of a sexual nature in the workplace. *Id*., pp. 13-15. Many of these women told Norton that the comments made them uncomfortable and/or that they felt the comments or discussions were inappropriate for the workplace. *Id*. Tellingly, however, not one single coworker lodged a complaint against Staples for any inappropriate language. This issue only came to light after Norton approached some of the nurses and brought up the subject. In addition, the testimony at trial revealed that many of the nurses who admitted hearing such comments stated that the comments were considered jokes, and that any discussions of a sexual nature were had in jest, often for purposes of relieving the stress in the workplace. Norton reported her findings to Alt and Jaquay. Parkview considered Staples's comments to be violations of the hospital's policies and procedures. At trial, Parkview introduced documentary evidence that included not only the hospital's Anti-Harassment Policy as set forth in the

3

Employee Handbook, but also separate policies and procedures governing workplace conduct. The latter documents contained a provision that stated that inappropriate language was not permitted in the workplace. Norton, Alt and Jaquay made the decision to terminate Staples, allegedly because she made such comments and engaged in such "inappropriate" conversations. At the time of her termination, Staples was preparing to take FMLA leave to have surgery. Staples had requested, and been approved for, FMLA leave on seven prior occasions. *Id*., p. 7.

Parkview argues that the evidence at trial "proved" that Norton, Alt and Jaquay followed Parkview procedure and agreed that "Staples should be fired for violating Parkview's policies." *Id*., p. 5. Parkview also contends that "[i]t is undisputed in the record that Parkview had a rule against inappropriate language, vulgar or lewd remarks, or sexual conversation in the workplace. All of the witnesses who testified were aware of the rule."[3] Parkview maintains that it fired Staples *only* because she violated "the rule" against inappropriate language and not for any reason related to the FMLA. *Id*.

Parkview states that "[t]here was no evidence presented that the employer's reason for termination was a pretext for discrimination. Parkview submits there was no evidence presented that Staples did not deserve termination but, even assuming there was, the record is void of any evidence that Parkview's reason was a pretext for discrimination." *Id*., p. 9.

Parkview also argues that there was an "inconsistent verdict" in the case, since the "jury

---

[3] This statement is only partly true. All the nurses who testified said that they were told or shown the Parkview Anti-Harassment Policy–or at least the Employee Handbook– when they began their employment. However, several of them also testified that they had not heard of a specific policy prohibiting sexually oriented conversations, or had forgotten all about it and had to go look it up in their employee handbooks when they learned that Mary Staples had been fired.

found in favor of Parkview and against Staples on her claim of FMLA retaliation and liquidated damages." *Id*. Parkview claims that this demonstrates that it is entitled to judgment as a matter of law or a new trial, because "[t]here was no evidence ever submitted into the record which would support Staples' FMLA interference claim other than the retaliation." *Id*. In other words, the alleged retaliatory discharge was the only evidence Staples presented in support of her claim that Parkview interfered with her FMLA rights. Since the jury found against her on that issue, her interference claim must also fail, according to Parkview.

Finally, Parkview argues that Staples's testimony was not credible, while the testimony of Lori Norton and all of the nurses called by Parkview was credible. *Id*., pp. 10-15. For example, Parkview points out that Staples testified that she did not ask "sexual questions to 3 young nurses, all of whom stated she did." *Id*., p. 12. Parkview contends that Staples simply lied, while all of its witnesses told the truth. This credibility issue is not nearly that simple, however. Not only did Staples *admit* that she sometimes engaged in conversation of a sexual nature (although she contended it was mostly in jest and done to relieve stress), but most of the other NICU nurses also admitted that such conversations took place. In fact, several of the nurses testified that even certain members of management and at least one doctor and one technician engaged in sexual conversations or sexual joking. Parkview devotes a great deal of its brief in support of its present motion discussing this credibility issue and arguing that Staples's testimony was not credible. Obviously, the jury felt differently, and it is the sole domain of the jury to make such credibility determinations. It is not proper for the court, when resolving a motion for judgment as a matter of law or a motion for new trial, to assess credibility or to weigh the evidence–two difficult tasks the jury already accomplished. *See, e.g., Burton v. General*

*Motors Corp.*, 2008 WL 3853329 at * 4 (S.D. Ind. August 15, 2008).

In her response to Parkview's motion, Staples begins by arguing that "Parkview devotes more than three full pages of its brief to the issue of 'motive,' an element Staples was clearly NOT required to prove in order to prevail on her FMLA interference claim." Plaintiff's Response, docket at 91, p. 1. Staples points out that "[t]he Court correctly stated the law in the Court's Final Jury Instruction 21–'it does not matter whether Parkview intended to violate the FMLA.' Parkview voiced no objection to this correct instruction of law." *Id*.

Next, Staples argues that Parkview's assertion that the evidence overwhelmingly proved that Parkview had an anti-harassment rule that was known to all employees misrepresents the evidence at trial. Staples argues that "Parkview's claim that 'all of the witnesses who testified were aware of the rule' against inappropriate language in the workplace is disingenuous. . . . Every nurse specifically questioned . . . were only aware of the Handbook Anti-Harassment policy prior to Staples' termination." *Id*., pp. 1-2. However, Staples then points out that the evidence showed that virtually all the nurses had, at best, a vague recollection of the Handbook policy, that they were unaware that Parkview had a separate and distinct "administrative policy" on the subject of inappropriate language, and that "Parkview never held any unit meetings, in-services, seminars or other training sessions to inform the nurses what types of conduct violated Parkview's administrative version of the policy, or that all sexual jokes, comments and conversation in the workplace were prohibited regardless of whether they were meant to

intimidate, threaten or coerce others." *Id*., p. 2.[4]

In its reply brief, Parkview claims that Staples "does not understand Parkview's argument in [its motion for judgment as a matter of law] . . . ." Defendant's Reply, docket at 94, p. 2. Parkview argues that motivation *is* relevant to Staples' interference claim under the particular factual scenario presented this case and, consequently, Jury Instruction No. 21 does not defeat Parkview's argument that it is entitled to judgment as a matter of law. According to Parkview, Staples did not introduce any evidence to support her FMLA interference claim *other than* her claim that she was retaliated against when she was fired. Since a retaliation claim *does* require proof of improper motive, Staples' interference claim fails notwithstanding Instruction No. 21. In other words, according to Parkview, there can be "no interference without retaliation under Staples' claims and facts." *Id*., p. 4. Parkview claims that motive and intent are essential elements to Staples' FMLA interference claim because "Staples' interference claim is not a traditional interference claim in that it does not involve the more common claims–an employer's failure to maintain insurance and other benefits while an employee is out on FMLA leave, an employer's failure to restore the employee to her position or an equivalent position with the same terms of employment on her return from FMLA leave–but, rather Staples' case is a discharge case involving an employer's terminating an employee for the purpose of denying

---

[4] Staples then discusses several instances where the evidence demonstrated that employees other than Staples also engaged in what could be characterized as "inappropriate language" but were not reprimanded or terminated. For example, "a manager, Laura Michael, was permitted to make a sexual comment to a young nurse during a unit meeting in front of Norton. Michael told the nurse, whose phone had started to ring, that the nurse was going to put her phone on vibrate so that she could 'stick it between [her] legs.' Neither Norton nor Michael denied that Michael made this direct and clearly sexual comment during a meeting that Norton attended not long after Staples was fired and while Michael was the Interim Manager." *Id*., p. 3.

7

her FMLA leave and benefits altogether." *Id*., p. 6.

However, the evidence was not, as Parkview characterizes it, "void" of any evidence that could permit the jury to conclude that Parkview interfered with Staples's rights under the FMLA. By terminating her for what the jury could reasonably have concluded was a bogus reason, Parkview interfered with her rights. More to the point, the evidence could support a jury's conclusion that Parkview invented a reason to fire Staples and that the real reason was, for example, that Parkview was exasperated with Staples taking multiple leaves of absence under the FMLA. In this respect, the jury verdict was not inconsistent. The jury concluded that Parkview did not retaliate against Staples because she requested FMLA leave, i.e., her termination was not based on her latest request for such leave. Still, the jury also concluded that Parkview did interfere with Staples's plan to take FMLA leave since she was fired before she was able to take that leave. There was sufficient evidence presented at trial from which a jury could reasonably conclude that Parkview's explanation for Staples' termination was disingenuous. The evidence established that many nurses (and, apparently, even at least one physician and one technician) engaged in discussions that violated Parkview's anti-harassment policy. None of those other employees were fired (or even disciplined) as a result of their conduct. This fact, coupled with the fact that none of Staples' coworkers lodged complaints about her behavior, could lead a jury to conclude that Parkview's witnesses were the ones who were not credible. If the jury did not believe that the decision by Norton, Alt and Jaquay to fire Staples for alleged violations of an apparently little-known and/or widely ignored policy against inappropriate language was true, the jury could then reasonably conclude that the decision interfered with Staples' attempt to exercise her right to FMLA leave. But regardless of what was at the heart of the termination

8

decision, the instructions on the law that the jury was given provided a basis for the jury's verdict, as Staples argues in her response brief.

      Instruction number 21 of the Court's Final Jury Instructions stated as follows:

> To prevail in this case on her claim of interference with her FMLA rights, Staples must prove by a preponderance of the evidence that: (1) she was entitled to time off from work because she had a serious medical condition that made her unable to perform the functions of her job; (2) she gave Parkview the proper notice of the need for time off from work; and (3) that Parkview in any way interfered with, restrained, or denied Staples' entitlement to take time off from work. In this case, it does not matter whether Parkview intended to violate the FMLA. *If Parkview denied Staples a right to which she was entitled under the FMLA, then Parkview is liable and Staples should prevail.*

Court's Final Jury Instructions, docket at 80, p. 7 (italics added). This jury instruction was taken from Fifth Circuit Pattern Instruction No. 11.10.1. Not only did Parkview not object to this instruction, it even included the relevant sentence in its own proposed jury instructions in this case. Parkview's proposed jury instruction number five, which Parkview captioned as "FMLA–Interference With Leave Rights," contained the following sentence: "In this case, it does not matter whether Parkview intended to violate the FMLA. If Parkview denied Staples a right to which she was entitled under the FMLA, then Parkview is liable, and Staples should prevail." Parkview's Proposed Jury Instructions, docket at 61, p. 2. So, both Staples and Parkview agreed that this sentence was a proper statement of the law concerning FMLA interference claims, and both sides agreed it should be included in this court's Final Jury Instructions. The Seventh Circuit has also explained that "[t]o prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing *Hoge v. Honda Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)).

Nonetheless, Parkview now argues that Staples' interference claim must fail since the jury found against her on her retaliation claim. Parkview maintains that Staples' termination from employment was the only adverse action she suffered and therefore can be the only basis for her interference claim as well as her retaliation claim. If Parkview did not retaliate against Staples, as the jury concluded, then it is only logical that Parkview could likewise not have interfered with any right Staples had under the FMLA. In other words, Parkview is attempting to transfer the "intent" element of Staples's retaliation claim to her interference claim (at least by default, if not directly). But this theory flies in the face of the law as both sides decided it should be stated to the jury. Final Jury Instruction No. 21 made it clear that if the jury concluded that Parkview in any way interfered with Staples's FMLA rights she should prevail, notwithstanding the fact that the jury simultaneously concluded that Parkview did not retaliate against Staples when it fired her. The two claims are distinct, as are the bases for imposition of liability.

As plaintiff's counsel pointed out during the brief oral argument held on November 10, if the jury believed that Parkview's explanation concerning Staples' alleged violations of its policies was not a credible basis for the investigation into Staples' behavior and her eventual termination, then the jury could reasonably conclude that Parkview interfered with Staples' FMLA rights. Staples was, after all, fired before she took her latest FMLA leave and had to go ahead with her wrist surgery after her termination from Parkview. There was certainly sufficient evidence to suggest that Parkview's explanation regarding Staples's violation of the hospital's rules and policies about inappropriate language in the workplace was not credible. This included, as stated above, the fact that even the nurses who claimed to have heard Staples' inappropriate remarks never formally complained about them, and the fact that several of those

same nurses said they had only a vague recollection (or no recollection at all) of any policy against sexually oriented jokes, banter or conversation. Also, the evidence demonstrated that while Parkview came down hard on Staples for her alleged violations, it failed to investigate or discipline any of the other many employees who were likewise engaged in similar conduct. When it came to the retaliation claim, the jury clearly concluded that Parkview was ultimately motivated by factors *other than* Staples' attempts to exercise her FMLA rights. There was, for example, evidence from which the jury could have reasonably concluded that Staples was perceived, by both her coworkers and members of management, as a troublesome and/or disruptive force in the NICU. There was testimony that Staples had a forceful personality which at least some of her coworkers felt was overbearing. The jury could have reasonably concluded that Parkview's ultimate decision to fire Staples was motivated by management's desire to get rid of an employee who it perceived was negatively affecting the morale of other nurses in the NICU, and that Staples' plan to take her eighth period of FMLA leave was not a determinative factor.

> Staples summarizes the issue before the court in the following way:
>
> In reliance on its own desire to convert Staples' interference claim to a 'denial' of substantive rights claim, Parkview insists that the jury verdict is inconsistent. Apparently, despite the clear legal support for Staples' two different claims for FMLA violations, and despite the clear set of agreed upon jury instructions regarding the differences between Staples' FMLA interference claim and Staples' FMLA retaliation claim, Parkview unreasonably insists that you cannot have one without the other. . . . There is nothing in the law or in the clear, agreed upon jury instructions, or in the agreed upon verdict form that required the jury to find against Staples on her interference claim if the jury found against Staples on her retaliation claim.

Plaintiff's Response, docket at 91, p. 4.

Again, Parkview argues that there can be "no interference without retaliation under

Staples' claims and facts." But the court agrees with Staples that this argument ignores the distinction, however conceptually cloudy it may be in this case, between Staples' interference claim and her retaliation claim. Staples' argues that the verdict is not inconsistent because while the jury found that her termination was not motivated solely by a desire to prevent her from exercising her right to FMLA leave (or for having done so previously), the termination was still done for an improper or bogus reason and therefore ended up interfering with Staples' ability to take her most recently requested period of FMLA leave. Thus, while the jury did not believe that Staples proved that her termination was directly related to the exercise of her rights under the FMLA, it also did not believe Parkview's contention that she was fired because she violated the hospital's prohibition against inappropriate language. So her termination interfered with her FMLA rights even though it was not done for retaliatory purposes. There was certainly sufficient evidence presented at trial to cast serious doubt on Parkview's alleged nondiscriminatory reason for terminating Staples. Based on the evidence presented, and especially the credibility determinations that had to be made to resolve fact issues in this case, the court finds no basis for second guessing the jury's conclusions regarding Staples' interference or retaliation claims.

A trial court has the discretion to enter judgment as a matter of law following a jury verdict only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . ." Fed.R.Civ.P. 50(a). "The court may set aside the jury's verdict and enter judgment as a matter of law *only when* the evidence is such that, without resolving conflicts in the testimony or otherwise considering the weight of the evidence, there can be but one

12

conclusion as to the verdict that reasonable jurors could have reached." *Burton v. General Motors Corp.*, 2008 WL 3853329 at * 4 (S.D. Ind. August 15, 2008) (italics added) (citations omitted). Similarly, "[i]n deciding on a motion for a new trial under Rule 59 of the Federal Rules . . . the court must determine whether the jury's verdict was against the weight of the evidence . . .or whether the trial was unfair for other reasons." *Id.* (citing *Westchester Fire Insurance Co. v. General Star Indemnity Co.*, 183 F.3d 578, 582 (7th Cir. 1999)). The decision whether to enter judgment as a matter of law or to grant a new trial is within the sound discretion of the trial court. *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir. 1982). These are heavy burdens for the party moving for judgment as a matter of law or for a new trial. In the present case, the court, for the reasons discussed above, concludes that Parkview has failed to meet its burden under either Rule 50 or Rule 59, and its motion is therefore denied.

## CONCLUSION

For the reasons discussed herein, the Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial filed by the defendant, Parkview Hospital, Inc., is DENIED. Parkview is directed to file a response to plaintiff's pending Motion for Attorney Fees (docket at 85) and plaintiff's pending Motion for Award of Front Pay and Prejudgment Interest (docket at 87) within thirty (30) days of the date of entry of this Opinion and Order. Plaintiff may file a reply brief, if desired, within fifteen (15) days of receipt of Parkview's response.

Date: December 16, 2009.

/s/ William C. Lee
William C. Lee, Judge

United States District Court
Northern District of Indiana