# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **MARY STAPLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No.: 1:07-CV-327** |
| | ) | |
| **PARKVIEW HOSPITAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

This matter is before the court for resolution of two pending motions. Plaintiff Mary Staples ("Staples") filed an Application for Attorney Fees as Prevailing Party ("Motion for Attorney Fees") on August 26, 2009 (docket at 85). Defendant Parkview Hospital, Inc. ("Parkview") filed a response in opposition to the motion on January 15, 2010 (docket at 103) and Staples filed a reply brief on January 28, 2010 (docket at 106). Staples also filed a Petition in Support of Award of Front Pay and Prejudgment Interest ("Motion for Front Pay") on August 27, 2009 (docket at 87). Parkview filed a brief in opposition to that motion on January 15, 2010 (docket at 101) and Staples filed her reply on January 28, 2010 (docket at 107).[1] For the reasons discussed below, the Motion for Attorney Fees is GRANTED and the Motion for Front Pay is GRANTED. Also, the Clerk of the Court is directed to tax costs in the amount of $6,338.21 in favor of plaintiff and against defendant, pursuant to the Bill of Costs filed on August 26, 2009

---

[1] On August 31, 2009, just days after Staples filed the two presently pending motions, Parkview filed a motion for judgment as a matter of law or, in the alternative, for a new trial. Docket at 88. In light of Parkview's motion, the court suspended briefing on Staples' motions for fees and front pay until after the court ruled on Parkview's motion. The court entered an Opinion and Order denying Parkview's motion on December 16, 2009 (see docket at 99). At that point, briefing resumed regarding the two motions discussed in this order; thus, the unusually long gap between the filing of Staples' motions and the response and reply briefs.

(docket at 86).[2]

## DISCUSSION

Staples filed this lawsuit against Parkview, her former employer, on October 30, 2007, alleging that Parkview violated her rights under the Family and Medical Leave Act ("FMLA") and retaliated against her for exercising or attempting to exercise her rights under the Act. The case was tried to a jury from August 18 to August 21, 2009, and the jury found in favor of Staples on her claim of interference with her FMLA rights but against her on her retaliation claim. The jury also found that Staples was not entitled to liquidated damages (as allowed under the FMLA), but did award her lost wages in the amount of $38,500. *See* Jury Verdict, docket at 81.

In her present Motion for Attorney Fees, Staples is seeking an award of $220,300.55. Motion for Attorney Fees, p. 3. In support of that motion, Staples' attorneys submitted fee affidavits and copies of their law firm's itemized statements with regard to time expended in the case from its inception. *Id.*, Exhibits A, B and C. In her Motion for Front Pay, she seeks front pay in an amount between $51,289.16 and $76,933.74. Motion for Front Pay, p. 4. The first amount constitutes front pay for a period of two years from the date of her termination from

---

[2] Plaintiff filed her Bill of Costs on August 26, 2009 in the amount of $6,338.21. On September 14, 2009, the court instructed the Clerk of the Court to refrain from taxing these costs until such time as the court entered an Order ruling on Parkview's motion for judgment as a matter of law or, in the alternative, for new trial. *See* docket at 93. That Order was entered on December 16, 2009. The Clerk's office may have interpreted the court's instruction on September 14 to mean that costs should not be taxed until the entry of *this* Order, and so costs have not been assessed against defendant. In any event, the court has reviewed plaintiff's Bill of Costs and finds the costs requested to be reasonable and legitimate. Furthermore, defendant has not lodged any objection to the Bill of Costs. Accordingly, those costs should now be taxed against defendant.

Parkview and the second figure constitutes front pay for three years. Staples is also asking the court to award her "prejudgment interest at the IRS prime rate for each week of her losses starting on September 12, 2007." *Id.*, p. 2.

**1. Motion for Attorney Fees.**

Staples bases her Motion for Attorney Fees on 42 U.S.C. § 1988, which permits such an award to a prevailing party in a civil rights action. Motion for Attorney Fees, p. 1. (As Parkview points out on page 4 of its opposition brief, the FMLA itself expressly allows an award of attorney fees to a prevailing plaintiff pursuant to 29 U.S.C. § 2617(a)(3)). The district court has wide discretion in determining a reasonable and appropriate attorney fee award in a given case. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003).

Parkview opposes Staples' request for fees on several grounds. First, Parkview argues that "Staples failed to meet her initial burden on [her] fee application either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases." Defendant's Response to Motion for Attorney Fees, p. 2 (citing *Rice v. Sunrise Express, Inc.*, 237 F.Supp.2d 962, 972 (N.D. Ind. 2002)). Next, Parkview argues that the amount of fees Staples is seeking is unreasonable given what Parkview characterizes as Staples' "limited success" at trial (given that she prevailed on only one of two claims, was not awarded liquidated damages, and received a back pay award that was less than she argued for at trial). *Id.* Parkview also argues that Staples' attorneys expended an inordinately high number of hours on the case, especially in comparison to the number of hours billed by the defense. *Id.*, pp. 2-5.

3

In her reply brief, Staples refers to Parkview's first argument as "odd," arguing that in 2005, in the case of *Firestine v. Parkview Health Sys., Inc.*, a case "tried by the same counsel with the same judge, Parkview did not claim that Staples' counsels' affidavits, also submitted without any other supporting affidavits from outside attorneys, were insufficient to support its claims for attorney fees as the prevailing party." Plaintiff's Reply in Support of Motion for Attorney Fees, p. 1. Staples goes on to state that "the affidavits currently before this court state that the rates charged are the usual and customary rates of each attorney representing the Plaintiff and that such charges are reasonable based upon similar skill and experience of attorney and legal service providers practicing in Northern Indiana." *Id.*, pp. 1-2 (citing plaintiff's Exhibit A (Affidavit of Attorney Lori Jansen) and Exhibit B (Affidavit of Attorney Cynthia Rockwell)). Staples also points out that "Parkview has not submitted its own sworn affidavits to refute the statements contained in Staples' attorneys' affidavits." *Id.*, p. 2. Nonetheless, Staples attached to her reply brief an affidavit from the partner of an established Fort Wayne law firm stating that the fees charged by Staples' attorneys were reasonable and within the prevailing rates for employment lawyers in this area. *Id.* (citing Exhibit 1, Affidavit of Shane C. Mulholland). In this case, Staples' two attorneys charged an hourly rate of $225.00. Mr. Mulholland, who states that he personally charges a rate of $245.00 per hour, is "personally aware that the current billing rates for attorneys/partners in Fort Wayne, Indiana is between $225.00 and $350.00 per hour." *Id.*, ¶ 6. The court agrees with Staples that the hourly rate charged by her attorneys is reasonable and appropriate based on their experience and qualifications. The rate is well within the range of hourly rates listed in dozens of attorney fee applications this court has reviewed in recent years. In support of its position, Parkview cites the

case of *Rice v. Sunrise*. In that case, this court noted that plaintiff's attorneys had submitted affidavits from other area attorneys attesting that the rates requested were reasonable and within the prevailing hourly rate. *Rice*, 237 F.Supp.2d at 972. However, this court did *not* state, as Parkview apparently now implies, that the lack of such affidavits would be fatal to a movant's request for attorney fees. The fact that Staples did not attach additional affidavits from other local or area attorneys as exhibits to their original motion is not a sufficient reason to deny Staples' Motion for Attorney Fees. Anyway, Mr. Mulholland's affidavit, filed with Staples' reply brief, defeats this portion of Parkview's argument.

The determination of an attorney's "reasonable hourly rate" should be based on the "market rate" for the services rendered. *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir. 1996)). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* at 555 (internal citations omitted). The burden of proving the market rate is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *Id.* at 554-55. In this case, however, Parkview does *not* challenge the hourly rates charged by Staples' attorneys as being unreasonable or excessively high in the Northern District of Indiana. Instead, Parkview merely challenged the fact that Staples' attorneys had not submitted supporting affidavits to support their hourly rate. The court concludes that the affidavits submitted by Staples' own attorneys adequately outline each attorney's education, experience and degree of expertise. The court further concludes that the hourly rates charged by Staples' attorneys, both of whom have practiced in this court for years, are well within the

reasonable and established range charged by attorneys of equivalent experience who appear in this court.

Parkview also argues that the fee award of $220,300.55 is unreasonable and should be reduced because Staples' attorneys billed an excessive number of hours in this case. Parkview attached to its response brief a copy of its own attorneys' itemized billing statement and states that "[t]he Court will note that Staples' counsel's total hours on the case through 8/21/09 (the last day of trial) were 964.95. Through that same date, Parkview's counsel expended a total of 588.75 hours in defense of the case." Defendant's Response to Motion for Attorney Fees, p. 3 (citing Exhibit 1). The fact that plaintiff's attorneys billed nearly 400 more hours than defendant's attorneys through the last day of trial is, according to Parkview, unreasonable and unnecessary. *Id*.

Regarding attorney fee petitions, "[t]he significant inquiry . . . is whether or not this court determines that the expenses are reasonable, *Hensley*, 461 U.S. 424, 103 S.Ct. 193, and whether the documentation was adequate. *Webb v. James*, 967 F.Supp. 320 (N.D. Ill. 1997), *aff'd*, 147 F.3d 617 (7th Cir. 1998), *reh'g denied*." *Moore v. University of Notre Dame*, 22 F.Supp.2d 896, 912 (N.D. Ind. 1998). The burden to make this showing is naturally on the party seeking the fee award, and the claimed hours will be reduced or disallowed altogether if they were unreasonably expended, or if the court is unable to determine whether they were reasonably expended. *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986) ("The billing records must be sufficiently clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary.") (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In particular, entries that fail to define a precise purpose or time records that lump

6

together multiple tasks in a single block of billed time, are impermissibly vague and inadequate because it is impossible to evaluate them to determine whether "appropriate billing judgment" was exercised. *See*, *e.g.*, *In re Olson*, 884 F.2d 1415, 1428-29 & n.22 (D.C. Cir. 1989); *Webb*, 967 F.Supp. at 324; *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1021 (N.D. Ohio 1997); *W.C. v. DeBruyn*, 883 F.Supp. 354, 355 (S.D. Ind. 1995); *Vitug v. Multistate Tax Comm'n*, 883 F.Supp. 215, 224 (N.D. Ill. 1995); *Claus by Claus v. Goshert*, 657 F.Supp. 237, 244 (N.D. Ind. 1987); *Bovey v. City of Lafayette*, 638 F.Supp. 640, 646-47 (N.D. Ind. 1986).

Given this analytical framework, Parkview makes only a general objection to the hours expended, contending that plaintiff's counsels' hours are unreasonable and should be reduced. Parkview does not, however, point to any specifics in the billing records submitted by Staples' attorneys to demonstrate exactly what entries are allegedly excessive or otherwise unacceptable. As to general objections such as Parkview's to the hours expended, it is worth noting that those opposing fee applications have obligations, too. "In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). Here, however, Parkview fails to designate which hours in the plaintiff's submissions are excessive and which hours should be excluded. Instead, Parkview merely attaches its own attorney's itemized billing statements in an attempt to establish that Staples' attorneys spent an inordinate amount of time on this case. But the fact that one law firm might expend a substantially higher number of hours on a case than the opposing firm is not, in and of itself, a sufficient reason to reduce an attorney fee request. It is true that one measure of

the reasonableness of a plaintiff's fee request is a comparison between the plaintiff's request and the fees expended in defense of the lawsuit. Certainly, the time spent by defense attorneys is not a perfect measure of the time spent by plaintiff's lawyers. But, as the court stated in *Ruiz v. Estelle,* 553 F.Supp. 567, 584 (S.D.Tex. 1982), it is not without value:

> By definition, the parties involved were litigating the same issues. The time spent by defendants' attorneys in defending an action necessarily relates to the time spent by plaintiffs, though the relation is obviously imprecise, and may be governed by a variety of factors. Federal courts have repeatedly noted the value of information concerning the defendants' counsel's time expenditure, in assessing the reasonableness of time claimed by plaintiffs .... Though an assumption of precise congruity between the amounts of time spent by the two parties would obviously not be warranted, the value of the comparison cannot reasonably be assailed.

553 F.Supp. at 584 (citations omitted). In this case, while Staples' attorneys spent a significantly higher number of hours on the case than did defense counsel, the court's exhaustive examination of plaintiff's counsels' billing records fails to reveal any excessive, duplicative or clearly unnecessary expenditures of time. Parkview simply makes the theoretical argument that since its own counsel billed substantially less hours than Staples' counsel that Staples' counsel spent an unreasonable and/or unnecessary amount of time on the case and therefore should not recover all of the fees they are requesting. Again, Parkview makes this argument without pointing to any specifics. This case was hotly contested at trial and both sides did an excellent job of presenting their evidence and arguments. Both plaintiff's counsel and defendant's counsel demonstrated intimate knowledge of the case, the issues, the evidence, and their respective arguments. No doubt Parkview is pleased that their counsel was able to present such an impressive and at least partially successful defense on its behalf. But the court concludes that this fact alone, in this particular case, does not automatically mean that plaintiff's counsel expended an unreasonably

high number of hours preparing, presenting, and arguing their case. For these reasons, the court rejects Parkview's argument that Staples' attorney fee request should be reduced based on the fact that her attorneys expended a greater number of hours on the case through trial than did defense counsel.[3]

Despite the absence of detailed objections by Parkview, the court is still mindful that plaintiff and her counsel were required to exercise "billing judgment" in making their attorney fee claim. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. 1933 (explaining that a fee applicant is expected to exercise "billing judgment" in deciding which hours are "properly billed to one's adversary pursuant to statutory authority"). Accordingly, the court has the duty and responsibility to review carefully a plaintiff's evidence (i.e., billing statements) submitted in support of her attorney fee request.

Having thoroughly reviewed the billing records submitted by plaintiff's attorneys the

---

[3] In her reply brief, Staples also argues that her attorneys put in a much greater amount of "footwork" in the case than did defense counsel, including tracking down witnesses, interviewing witnesses out of town, and so on. By way of specific example, plaintiff points out that "Parkview's counsel took two (2) depositions. Staples's counsel and staff took 14 depositions . . ." Plaintiff's Reply in Support of Motion for Attorney Fees, p. 5. The court is also mindful of the fact that in the vast majority of cases, plaintiff's lawyers must essentially "construct" the case from the ground up, and defense counsel then responds in the manner they determine will be most effective. Many times, as in this case, plaintiff's counsel must depose many potential witnesses (e.g., defendant's other employees and management personnel), all of whom are under the control of the defense and readily available to the defense (usually at one location) for interviews. In addition, most civil rights cases, especially those under statutes that include "fee-shifting" provisions, are taken on by plaintiffs' attorneys on a contingency fee basis. Throughout the pendency of the case, attorneys for the plaintiff are incurring the costs of litigation and assuming the high risk of working on a contingent fee basis. This fact my very well motivate plaintiff's counsel to work longer hours investigating, researching, and building a case than would defense counsel, in order to minimize the possibility of losing the case and, consequently, recovering nothing in the way of fees. *See, e.g.*, *Bird v. Mahan*, 1990 WL 430733 at *10-11 (N.D. Ind. June 28, 1990) (risk of non-recovery is one factor that can be considered by the court when determining reasonable attorney fee award).

court concludes that the amount of time appears well-spent on activities necessary to the litigation. Staples' attorneys state in their affidavits that their billing records "identify the specific work that was performed for the hours expended by the attorneys and legal assistant on Plaintiff's behalf" and that "[c]ounsel for the Plaintiff have also made a good faith effort to exclude from Plaintiff's fee request hours that are either excessive, duplicative, or otherwise unnecessary." Motion for Attorney Fees, Exhibit A, Affidavit of Lori W. Jansen, ¶¶ 5-6. Even more importantly, Staples' attorneys made a concession in their fee request by indicating that "[a]ny attorney and legal assistant time recorded for work specifically associated with Plaintiff's retaliation claim has been deleted from the billing records." *Id.*, ¶ 5. Thus, Staples' fee request, even though significant, has already been reduced somewhat to take into consideration that she lost her retaliation claim at trial. In addition, Staples' attorneys' itemized billing records do not contain any vague or cryptic entries that fail to identify the specific task performed on any specific date. There are none of the proverbial "telephone call to person X" or "prepare memo" or "write letter" type of entries. Instead, the billing records submitted by Staples are impressively detailed. Even references to meetings between Staples and her attorneys are not listed simply as "meeting with client." By way of example, such entries include statements such as: "Meet with client to discuss more discovery to Parkview and Parkview's answers to Plaintiff's discovery; begin to choose deponents and compose questions for depositions" (*Id.*, Exhibit C, entry of 04/24/2008) or "Telephone conferences with [Parkview attorney] to schedule depositions of Parkview management and plaintiff; two e-mails to client regarding the deposition dates" (*Id.*, entry of 05/08/2008). The court concludes that Staples' attorneys' billing records are sufficiently detailed and precise, and reveal no billing entries that are improperly vague or

clearly duplicative.

Finally, Parkview argues that Staples should recover a far lesser amount in attorney fees due to what Parkview characterizes as her limited success in this case and the fact that she recovered a lesser sum from the jury than she had requested. In support of this argument, Parkview once again cites a case from this court, *Needham v. Innerpac, Inc*., 2008 WL 5411638 (N.D. Ind. Dec. 24, 2008). Parkview notes, correctly, that this court "discounted the attorneys' fees by thirty-five percent (35%) to account for the plaintiff's limited success on his legal claims and on his damage claims. The Court reasoned that such a lodestar reduction may be based on unsuccessful claims and the limited success of any remaining claims." Defendant's Response to Motion for Attorney Fees, p. 2. This is correct, although Needham's success in his case against Innerpac, Inc., was significantly more limited than was Staples' success in this case. It is true, as Parkview argues, that Staples succeeded on one claim (interference with her FMLA rights) while losing on the second (retaliation). It is also true that the jury did not award her any amount of liquidated damages, and awarded her back pay of $38,500 when she had requested back pay of approximately $55,000. Certainly, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee." *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.,* 489 U.S. 782, 790 (1989). "If a plaintiff has achieved only partial success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Farrar v. Hobby,* 506 U.S.103, 114 (1992).

In this specific case, however, two factors caution against reducing plaintiff's fee request. First, while Staples did indeed present evidence of lost wages and benefits of over $54,000 but recover only $38,500 from the jury, the difference of less than $16,000 cannot be said to be a significant lack of success on the part of plaintiff. In the *Needham* case, for example, plaintiff had sought upwards of $100,000 in damages. Following a bench trial, the court concluded that plaintiff's evidence on the main portion of the damages claim failed to prove that claim by a preponderance of the evidence. Thus, the total awarded to Needham was $12,098.21 along with reasonable attorneys fees and court costs. Needham sought fees and costs in an amount of $207,329.35 for his two attorneys. Innerpac argued vehemently that Needham's attorneys should receive much less, given that he had recovered significantly less in damages than he had sought and lost on several of his claims of liability. The court eventually awarded plaintiff's attorneys fees in the amount of $146,634.86. This reduction from the amount requested was the result of the court's conclusion that much of the original amount plaintiff was requesting was attributable to fees incurred by plaintiff's counsel in opposing Innerpac's motion for summary judgment. The court granted summary judgment in favor of Innerpac on several of plaintiff's claims. The court also concluded that plaintiff's counsel had expended limited effort in battling summary judgment on those specific claims, most likely recognizing that they were not strong claims. Thus, because plaintiff had limited success at the summary judgment stage, the court concluded that the attorney fees incurred by him through that point in the proceedings could not fairly and legitimately be passed on to defendant following even more limited success at trial. The same cannot be said of this case. Parkview filed a motion for summary judgment in this case on both of Staples' claims, both sides presented extensive briefing and argument on those

claims, and Staples prevailed. While she obviously had less success at trial, losing on her retaliation claim and her request for liquidated damages, Staples was more successful overall than was Needham.

It is true that the court may adjust an award to account for partial success by reducing the overall award. *Spellan v. Board of Educ.,* 59 F.3d 642, 646 (7th Cir. 1995). Still, even when a plaintiff has limited success (either by losing on some claims, recovering less in damages, or both) that does not automatically mean that plaintiff's counsel did not earn their requested fee amount. This court explained this issue in the *Rice v. Sunrise, Inc.* case, holding as follows:

> Indeed, the Seventh Circuit has never held that an attorney's fee award is unreasonable "simply because it exceeds by some multiple the amount recovered by the plaintiff..." *Id.* Rather, the Seventh Circuit has made it clear that it rejects the application of mechanical rules "which call on a court simply to compare the amount demanded and the amount recovered because federal antidiscrimination law vindicates important public interests which may not be reflected in the size of a particular recovery." *Id.* (citing cases). For this reason the Seventh Circuit applies the test derived from Justice O'Connor's concurrence in *Farrar,* 506 U.S. at 121-122, 113 S.Ct. 566. Under this test, "we look at the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation." *Connolly,* 177 F.3d at 597 (citing *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir. 1993). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Bankston v. State of Illinois,* 60 F.3d 1249, 1256 (7th Cir. 1995).

*Rice v. Sunrise, Inc.*, 237 F.Supp.2d at 974-75. In this case, Staples prevailed through a very hard fought summary judgment stage and proceeded to trial on both of her claims. She succeeded on one claim and lost on the other, she recovered $38,500 of the $55,000 she requested, and she was unsuccessful in her claim for liquidated damages, which would have

doubled her monetary award.[4]  At the same time, she succeeded in convincing the jury that

Parkview had violated her rights under the FMLA, at least with respect to her interference claim,

and she recovered a significant portion of her requested back pay.  Her victory also entitles her to

an award of front pay, which of course is the issue addressed in Staples' second motion.  Since

the court determines that Staples is, in fact, entitled to a front pay award, as discussed below, her

overall monetary recovery in this case, while less than she sought, is still more than the $38,500

the jury awarded.  For these reasons, reducing Staples' attorney fee award would be based on

nothing more than mere speculation on the part of the court.  That is, the court would have to

base a reduction merely on some conjectural reasoning that the amount

requested–$220,300.55–is too much money for her attorneys to recover.  The court refuses to

make such a conclusion without concrete evidence and irrefutable argument to support it.  There

is neither in this case.  Accordingly, Staples' Motion for Attorney Fees will be granted and

plaintiff's attorneys will be awarded fees in the amount of $220,300.55.

### 2.  Motion for Front Pay and Prejudgment Interest.

While the jury awarded Staples $38,500 in back pay, the court has the authority and

discretion to determine and award front pay in FMLA cases.  29 U.S.C. § 2617(a)(1)(B).  The

FMLA also provides that the court may award prejudgment interest on any amount of back pay a

jury awards, in an attempt to ensure that a prevailing party is "made whole" for amounts lost as a

result of an employer's interference with her FMLA rights.  29 U.S.C. § 2617(1)(A)(ii).

---

[4] The FMLA provides that a plaintiff who prevails on a claim under the Act may recover
liquidated damages in an amount equal to the monetary damages (as in back pay) awarded by the
jury.  29 U.S.C. § 2617(a)(1)(A)(iii).  Thus, if Staples had recovered liquidated damages, her
total award from the jury would have been $77,000.

In this case, Staples argues that "[w]ithout an award of prejudgment interest, compensation to victims of discrimination is incomplete and an incentive to defendants to delay." Motion for Front Pay, p. 2 (citations omitted). As for front pay, Staples points out that such an award is part of the equitable relief available to a prevailing FMLA plaintiff. *Id.* Other forms of equitable relief available include "'employment, reinstatement, and promotion.'" *Id.* (quoting 29 U.S.C. § 2617(a)(1)(B)). In this case, Staples argues that "there appears to be no dispute between the parties that reinstatement is not available to Staples." *Id.* Accordingly, she maintains, an award of front pay is the only form of equitable relief available to her to compensate her for the amount of money she lost from the date of her termination until the date she obtained new employment, with an additional amount added since her compensation in her new position was less than what she was receiving at Parkview. *Id.*

Parkview argues that while Staples presented evidence that her lost pay damages following her termination from Parkview amounted to $55,403.14, "the jury viewed Mary Staples' damage calculations and found that her total loss did not amount to $55,403.14 as she had calculated, but rather were worth only $38,500. If the jury found her damages for the approximate two (2) year period were $38,500.00, Staples should not be entitled to a front pay award in excess of $25,000.00 per year." Defendant's Response to Motion for Front Pay, p. 2. However, even though Parkview acknowledges that the FMLA provides for an award of front pay (see Parkview's Response, p. 1), it offers no lesser alternative amount that it believes should be awarded. *Id.*, generally. Instead, Parkview points out that "'[f]ront pay is to be awarded, if at all, for a reasonable period of time, until a date by which the plaintiff using reasonable diligence, should have found comparable employment.'" *Id.*, p. 1 (quoting *Weda Annette Ward v. Tipton*

*County Sheriff Department*, 937 F.Supp. 791, 799 (S.D. Ind. 1996)). Parkview then goes on to argue that "Staples testified at trial that she had secured employment in the Dupont Hospital Newborn Nursery in October of 2007. However, she did not testify and no evidence was submitted as to her continued efforts to find employment comparable to her . . . position at Parkview." *Id.*, p. 2. Apparently, because Staples made a lower wage at Dupont than she had at Parkview (a fact that is not disputed), Parkview considers her job at Dupont to be *not* comparable to her job at Parkview. But this is a dubious argument. Staples was a nurse at Parkview and worked in the Neonatal Intensive Care Unit. Six weeks after her termination, she accepted a nursing position at Dupont in its Newborn Nursery unit. It would be difficult to imagine a more comparable position. Parkview cites no authority, nor could the court find any, to support Parkview's apparent argument that a "comparable position" means one offering exactly the same amount of pay. In fact, as Staples points out, "comparable work has been defined as 'a position that affords the plaintiff virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the previous position.'" Plaintiff's Reply in Support of Motion for Front Pay, pp. 2-3 (quoting *Ward*, 937 F.Supp. At 797). Staples further responds by contending that Parkview's argument is one involving the issue of mitigation, not an argument against an award of front pay. As Staples puts it, "[p]roof that Staples failed to mitigate her damages in an appropriate manner falls entirely on Parkview." *Id.*, p. 1 (citing *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 818 (7th Cir. 1990)). Staples is correct that Parkview did not present any evidence or argue at trial that Staples failed to mitigate her damages.

Plaintiff explains her position on front pay as follows:

Front pay should be awarded for a reasonable period of time until the plaintiff, using reasonable diligence, should have found comparable employment. . . . Front pay is supposed to put the plaintiff "in the identical financial position that [s]he would have occupied had [s]he been reinstated." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995). Because front pay is a substitute for reinstatement, it is designed to compensate Staples for lost earnings from her Parkview NICU baylor nursing position for as long as she could have expected to hold the job, and her earnings from her subsequent employment are supposed to be deducted from those lost earnings. *Flaherty v. Marchand*, 284 F.Supp.2d 1056, 1068 (N.D. Ill. 2003)[.]

*Id.*, p. 3. Staples then argues in her briefs, and states in an affidavit attached to her reply brief, that she "loses approximately $986.33 per paycheck as a direct result of her termination from Parkview." *Id.*, p. 4 and Exhibit 1, Affidavit of Mary Staples, ¶ 4. This calculation includes lost wages (including a slightly lower hourly rate and lost wages for additional weekend shift pay) and the fact that Staples pays more for her insurance coverage at Dupont than she did at Parkview. *Id.* Staples argues that "[t]his court should compensate Staples for the reasonable amount of time it will take her to reach her former Parkview baylor wage rate and award her two (2) to three (3) years of front pay, $51,289.16 or $76,933.74, respectively." *Id.*, p. 4.

The Seventh Circuit has explained that "front pay cannot extend past the time a reasonable person needs to achieve the same or an equivalent position in the absence of discrimination." *Biondo v. City of Chicago*, 382 F.3d 680, 691 (7th Cir. 2004). There is no bright line test to determine what constitutes a fair and reasonable time period for an award of front pay (although the Seventh Circuit in *Biondo* held that the district court abused its discretion by ordering front pay for a period of 12 years). *Id.* In any case, Staples is asking for a front pay award for a period of two to three years. Presumably, then, Staples is confident that she can reach a level of compensation equivalent to what she would have received if she had remained employed at Parkview within two or three years from the date of trial. One circuit court noted

17

the difficulty associated with making a determination of the fair length of time for an award of

front pay:

> "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." *Sellers v. Delgado Coll.,* 781 F.2d 503, 505 (5ᵗʰ Cir. 1986). This court has identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship.

*Downey v. Strain*, 510 F.3d 534, 544 (5ᵗʰ Cir. 2007) (citing *Reneau v. Wayne Griffin & Sons, Inc.,*

945 F.2d 869, 871 (5ᵗʰ Cir. 1991)).  In the present case, Staples had been employed at Parkview

for more than 15 years and had reached a certain level of seniority.  She was employed as a

weekend, night shift "baylor" in Parkview's NICU.  During many of her shifts, due to her years of

experience, Staples was assigned the role of "charge nurse," meaning she would oversee other

nurses on her shifts and give them assignments.  Staples also occasionally served as a mentor to

new and/or less experienced nurses.  While Staples was able to obtain similar employment at

Dupont Hospital about six weeks after her termination from Parkview, she was hired into her new

position at a lower rate of pay and had to pay higher amounts for her insurance coverage.  There

is no evidence in the record to suggest that Staples' job at Parkview would not have continued to

be a full-time, permanent position.[5]  There is also no evidence in the record to suggest that

Staples' pay at Parkview would have been reduced for any reason or that the cost of her insurance

---

[5] That it to say, no evidence in light of the jury's verdict.  Obviously, Parkview argued that it had legitimate, non-discriminatory reasons for terminating Staples, but the jury has spoken on that issue.  There has never been evidence in the record that, for example, Staples' job would have been phased out for some reason at some point in time or that her job would not have continued to be available to her.

benefits would have increased significantly in the immediate years following her termination. There is also no evidence that Staples' age or physical condition would have prevented her from continuing in her position at Parkview for many years to come. On the other hand, Staples does not indicate what opportunities she might have in her present job at Dupont for promotions, raises or other positive employment actions that could increase her pay anytime in the foreseeable future. Thus, it remains an exercise in speculation to try to determine the length of time it will take for Staples to make the same amount of money she was making at Parkview. Similarly, Parkview presents no evidence to refute Staples' front pay calculations. Instead, Parkview simply argues, as discussed above, that Staples somehow did not make a sufficient effort to obtain "comparable" employment and so is either not entitled to front pay or should receive a much smaller amount.

With all of these rather ethereal factors in mind, the court determines that a two-year front pay award in this particular case is reasonable. Given Staples' highly specialized training and years of experience as a nurse, it is not unreasonable to assume that she will have employment opportunities, whether at Dupont Hospital or somewhere else, that will enable her to be in an improved financial situation within a two-year period following the trial in this case, i.e., financially equivalent to where she would have been if she had continued her employment with Parkview. For these reasons, the court grants Staples' request for front pay and awards her front pay in the amount of $51,289.16 ($986.33 x 52 pay periods).

Finally, as to the issue of prejudgment interest, Staples argues in her motion that "prejudgment interest is an element of the make-whole relief victims of FMLA interference are entitled to receive." Motion for Attorney Fees, p. 2 (citing 29 U.S.C. § 2617 (1)(A)(ii)). Staples

contends that she is entitled to "an award of prejudgment interest at the IRS prime rate for each week of her losses starting on September 12, 2007." *Id.* (citations omitted).

Parkview acknowledges that "[p]re-judgment interest automatically becomes part of the damage award under the plain terms of the FMLA." Parkview's Response to Motion for Attorney Fees, p. 2 (citations omitted). Having conceded that an award of prejudgment interest is appropriate, Parkview then argues that such interest "should be calculated by taking into consideration that the damage amount of $38,500 was incurred over an approximate two (2) year time span beginning on or about September 12, 2007." *Id.* Parkview also seems to agree that the applicable interest rate is the prime rate. *Id.*, pp. 2-3 (citing *Rice v. Sunrise Express, Inc.*, 237 F.Supp.2d 962, 970 (N.D. Ind. 2002)) ("'Seventh Circuit provides that courts must use the prime rate as the benchmark for prejudgment interest.'"). The court infers that Parkview is asking the court to take into account fluctuations in the prime rate over the period from September 12, 2007, to the day of the judgment. This is a legitimate argument, since the prime rate in effect on September 12, 2007, was 8.25%, while the rate on the date the judgment was rendered was 3.25%. In her reply brief, Staples states only that she "is entitled to an award of prejudgment interest at the IRS prime rate for each week of her losses starting on September 12, 2007." Plaintiff's Reply in Support of Motion for Attorney Fees, p. 5. This seems to imply that she wants the court to apply a fluctuating rate calculated for each and every week between September 12, 2007, and the date of the judgment (perhaps coinciding with each of her paychecks if she was paid weekly), which would result in a higher calculation of interest. The parties appear to agree that the prime rate is the proper rate to use to calculate the prejudgment interest amount, but also appear to be arguing about how the amount of prejudgment should be calculated. In light of the

rather large amount of money involved in this case (back pay award, attorney fees, costs, and front pay), the prejudgment interest amount is small in comparison no matter how it is calculated. That might explain why both sides devote so little space to the issue in their respective briefs and why that briefing is somewhat vague. Be that as it may, the court will apply the applicable law, as unclear as it is on this issue, and award prejudgment interest at a fair and reasonable rate.

While there is a plethora circuit court cases holding that district courts have wide discretion on the issue of prejudgment interest, including what rate to use and how to calculate it, there is a surprising lack of consensus on exactly what rate to use and exactly how to apply it. However, in addition to this court (*See Rice v. Sunrise Express*, supra) other district courts have utilized the average prime rate to award prejudgment interest to plaintiffs in an FMLA case and a Title VII case. *See George v. GTE Directories Corp.,* 114 F.Supp.2d 1281 (M.D. Fla. 2000) (utilizing the average IRS prime rate from date of discharge through date of judgment in FMLA case); *Armstrong v. Charlotte County Bd. of County Commissioners*, 273 F.Supp.2d 1312 (M.D. Fla. 2003) (utilizing IRS prime rate for prejudgment interest in Title VII case). *See also, E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987) (district courts should IRS prime rate for purposes of assessing prejudgment interest). This is clearly the prevailing opinion and one on which the parties in this case seem to agree. As to whether the court should apply the prime rate to calculate Staples' prejudgment interest on a weekly basis or utilize some fashion of sliding scale, the court rejects both approaches. Instead, in an attempt to achieve some level of simplicity and some level of fairness to both sides, the court will award prejudgment interest at the rate of 5 %. This figure represents the average IRS prime rate from September 12, 2007, the

date of Staples' discharge, to August 21, 2009, the date of the judgment in this case.[6]  Therefore,

the court grants plaintiff's request for prejudgment interest on her backpay award of $38,500 at

the rate of 5 %, compounded annually.[7]


## CONCLUSION

For the reasons discussed in this Opinion and Order, the Motion for Attorney Fees filed by

plaintiff Mary Staples is GRANTED and plaintiff is awarded attorney fees in the amount of

$220,300.55; the Motion for Front Pay and Prejudgment Interest is GRANTED and plaintiff is

awarded front pay in the amount of $51,289.16 and prejudgment interest on her back pay award at

the rate of 5% for the period from September 12, 2007, until August 21, 2009, compounded

annually.   In addition, the Clerk of the Court is directed to tax costs in the amount of $6,338.21 in

favor of plaintiff and against defendant, pursuant to the Bill of Costs filed on August 26, 2009

(docket at 86).


Date: March 3, 2010.


    /s/   William C. Lee
                          William C. Lee, Judge
                          United States District Court
                          Northern District of Indiana

---

[6] The precise figure over the applicable period of time is 4.979%.  That figure has been
rounded up to 5%.

[7] *See Reed v. Mineta*, 438 F.3d 1063 (10th Cir. 2006).